1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT

8

EASTERN DISTRICT OF CALIFORNIA

9
10

11  GOLD COUNTRY DEVELOPMENT,          No.  2:20-cv-01712-MCE-CKD
    LLC, a New York State limited liability
12  company, et al.

13              Plaintiffs,                          **MEMORANDUM AND ORDER**

14        v.

15  COUNTY OF EL DORADO, a public
    entity, et al.,
16
                Defendants.
17

18        By way of this action, Plaintiffs Gold Country Development, LLC, Evelyn A. Gex, ,

19  and Christopher J. Marconi (collectively, "Plaintiffs" unless otherwise specified)  seek

20  redress for damages and injuries they claim to have sustained as a result of a raid upon

21  their hemp-growing operation in 2019.  Defendants include the County of El Dorado

22  ("County"), the El Dorado County Sheriff's Department ("Sheriff's Department"),

23  El Dorado County Sherriff John D'Agostini ("D'Agostini") and El Dorado County Sherriff's

24  Deputy Daryl J. Miller ("Miller")  ("Defendants").

25        Plaintiffs allege in their Complaint that, in effectuating the subject raid, Defendants

26  deprived them of their Constitutional rights in violation of both 42 U.S.C. § 1983 and

27  California's Bane Civil Rights Act, Cal. Civ. Code § 52.1 ("Bane Act").  Plaintiffs further

28  allege various common law state claims, including conversion, trespass to chattels,

1  negligence, intentional infliction of emotional distress, and declaratory relief.  Now before

2  this Court is a Motion to Dismiss brought, on behalf of all Defendants except Miller, [1]

3  pursuant to Federal Rule of Civil Procedure 12(b)(6).[2]  ECF No. 6.  Plaintiffs timely

4  opposed Defendants' Motion to Dismiss.  ECF No. 14.  Defendants then timely replied to

5  Plaintiffs' Opposition.  ECF No. 15.  For all the following reasons, Defendants' Motion to

6  Dismiss (ECF No. 6) is GRANTED.

7

8  <center>**BACKGROUND**[3]</center>

9

10      Both federal law and California law permit the research and commercialization of

11  hemp, notwithstanding prohibitions on marijuana.  Hemp and marijuana are variants of

12  the *Cannabis Sativa L* plant, but hemp by definition contains no more than 0.3%

13  tetrahydrocannabinol ("THC").  Cal. Health & Safety Code § 11018.5.  Furthermore,

14  hemp is expressly excluded from the Controlled Substances Act, which states that "the

15  term 'marijuana' does not include. . .hemp. . ."  21 U.S.C. § 802.  Notably, there is no

16  way to distinguish between hemp and marijuana based on plain view or odor alone.

17      According to Plaintiffs, with the passage of Proposition 64 in November 2016,

18  California law encourages research in hemp cultivation and production by permitting so-

19  called Established Agricultural Research Institutions ("EARIs") to grow hemp.  EARIs are

20  expressly permitted to cultivate and produce hemp plants with a THC content greater

21  than 0.3% if such cultivation "contributes to the development of types of industrial hemp

22  that will comply with the 0.3 percent THC limit."  Cal. Health & Safety Code

23  ────────────────

24  [1] The docket in this matter does not reflect that Miller has been either served with process or made any appearance as a party, and inquiry by the Court has confirmed that this is indeed the case.

25  Consequently, no motion has been made on Miller's behalf.  Plaintiffs are hereby ordered to show cause as to why Defendant Miller should not be dismissed for failure to serve, in accordance with Rule 4(m), within ten (10) days of the date this Memorandum and Order is electronically filed.

26  [2] All further references to "Rule" or "Rules" are to the Federal Rules of Civil Procedure unless

27  otherwise noted.

28  [3] Unless indicated otherwise, the following recitation of facts is taken, at times verbatim, from Plaintiffs' Complaint, ECF No. 1.

<center>2</center>

1   § 81006(e)(10).  Unlike other industrial hemp growers, EARIs are not required to obtain

2   a laboratory test report of THC levels of a random sampling within 30 days before

3   harvest.  Cal. Health & Safety Code § 81006(e).

4          In response to the demand for a variety of hemp-based products, including oils,

5   sprays, and other medicinal agents, Plaintiff Gex, established Gold Country

6   Development, LLC (the "LLC").   The LLC purchased 237 acres of land to research and

7   grow hemp at 4050 Lakeview Drive in El Dorado County.  Although Gex was ostensibly

8   the sole owner of the LLC, her "companion, fellow researcher and business associate",

9   Plaintiff Marconi, participated in the operation and Plaintiffs allege that together they

10  operated and maintained the LLC as an EARI even though it had not yet been formally

11  registered as such with the El Dorado County Agricultural Commissioner.

12         In May 2019, Plaintiffs purchased 5,500 certified hemp seeds under the LLC as

13  an EARI.  At that time, Plaintiffs claim they were set to register as a commercial grower

14  with the California Department of Food and Agriculture ("CDFA"), were prepared to plant

15  the hemp seedlings, and intended to use the future profits to recoup their extensive start-

16  up costs.

17         On or about July 12, 2019, a search warrant was issued for the Lakeview Drive

18  property by a magistrate judge of the El Dorado County Superior Court.  The search

19  warrant ordered "the destruction of any remaining marijuana in excess of 10

20  pounds . . . after samples, as required by Health and Safety section 11479. . ."

21  (emphasis added).  On or about July 17, 2019, over the course of nine hours, the search

22  warrant was executed at the Lakeview Drive property by about 25 deputies and agents,

23  including Miller, after Plaintiffs Gex and Marconi were ordered out of the residence at

24  gunpoint and handcuffed.  The various items were seized, including 5,500 hemp

25  seedlings, 450 Pa Khang hemp seedlings, and 12 medicinal marijuana plants, along with

26  funds, computers, and documents belonging to Plaintiffs.

27         As the property was being searched, Plaintiffs and other onsite witnesses

28  informed the deputies that the 5,500 seedlings were hemp and that the only marijuana

being grown on the premises was for Plaintiffs' personal medicinal use.  Moreover, the

Lakeview Drive property contained other evidence of hemp cultivation, including

literature, cannabidiol ("CBD") products, growing charts and plans, and business

documents.  While interrogating Gex and Marconi, the deputies, and Miller in particular,

made statements indicating they believed Plaintiffs were operating in connection with a

marijuana ring out of New York.  Ultimately, the deputies destroyed the hemp seedlings

and medicinal marijuana prior to any THC laboratory testing.

Plaintiffs further allege that Defendant County failed to train the individual

Defendants, maintained an official policy and/or custom of deliberate indifference of

constitutional rights by officers, and ratified actions taken by the individual Defendants'

actions that violated Plaintiffs' rights.  As support for these allegations, Plaintiffs point to

a single Board Supervisor meeting on June 23, 2020, where D'Agostini made erroneous

statements about hemp and the hemp testing process, including his belief that hemp

growers exceed the THC limitation and cash crop growers are experiencing 5%, 7%, and

10% THC levels well beyond those associated with hemp.  Generally, Plaintiffs aver that

D'Agostini misunderstood the difference between cannabis plants being cultivated for

hemp as opposed to marijuana, since he believed that there was no valid distinction

between the two crops.

**STANDARD**

On a motion to dismiss for failure to state a claim under Federal Rule of Civil

Procedure ("FRCP") 12(b)(6), all allegations of material fact must be accepted as true

and construed in the light most favorable to the nonmoving party.  Cahill v. Liberty Mut.

Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996).  Rule 8(a)(2) "requires only 'a short and

plain statement of the claim showing that the pleader is entitled to relief' in order to 'give

the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson,

4

1  355 U.S. 41, 47 (1957)).  A complaint attacked by a Rule 12(b)(6) motion to dismiss

2  does not require detailed factual allegations.  However, "a plaintiff's obligation to provide

3  the grounds of his entitlement to relief requires more than labels and conclusions, and a

4  formulaic recitation of the elements of a cause of action will not do."  Id. (internal citations

5  and quotation marks omitted).  A court is not required to accept as true a "legal

6  conclusion couched as a factual allegation."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)

7  (quoting Twombly, 550 U.S. at 555).  "Factual allegations must be enough to raise a right

8  to relief above the speculative level."  Twombly, 550 U.S. at 555 (citing 5 Charles Alan

9  Wright & Arthur R. Miller, Federal Practice and Procedure § 1216 (3d ed. 2004) (stating

10  that the pleading must contain something more than "a statement of facts that merely

11  creates a suspicion [of] a legally cognizable right of action")).

12        Furthermore, "Rule 8(a)(2) . . . requires a showing, rather than a blanket

13  assertion, of entitlement to relief."  Twombly, 550 U.S. at 555 n.3 (internal citations and

14  quotation marks omitted).  Thus, "[w]ithout some factual allegation in the complaint, it is

15  hard to see how a claimant could satisfy the requirements of providing not only 'fair

16  notice' of the nature of the claim, but also 'grounds' on which the claim rests."  Id. (citing

17  Wright & Miller, supra, at 94, 95).  A pleading must contain "only enough facts to state a

18  claim to relief that is plausible on its face."  Id. at 570.  If the "plaintiffs . . . have not

19  nudged their claims across the line from conceivable to plausible, their complaint must

20  be dismissed."  Id.  However, "[a] well-pleaded complaint may proceed even if it strikes a

21  savvy judge that actual proof of those facts is improbable, and 'that a recovery is very

22  remote and unlikely.'"  Id. at 556 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236

23  (1974)).

24        A court granting a motion to dismiss a complaint must then decide whether to

25  grant leave to amend.  Leave to amend should be "freely given" where there is no

26  "undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice

27  to the opposing party by virtue of allowance of the amendment, [or] futility of the

28  amendment . . . ."  Foman v. Davis, 371 U.S. 178, 182 (1962); Eminence Capital, LLC v.

1  Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003) (listing the Foman factors as those to

2  be considered when deciding whether to grant leave to amend).  Not all of these factors

3  merit equal weight.  Rather, "the consideration of prejudice to the opposing party . . .

4  carries the greatest weight."  Id. (citing DCD Programs, Ltd. v. Leighton, 833 F.2d 183,

5  185 (9th Cir. 1987)).  Dismissal without leave to amend is proper only if it is clear that

6  "the complaint could not be saved by any amendment."  Intri-Plex Techs. v. Crest Group,

7  Inc., 499 F.3d 1048, 1056 (9th Cir. 2007) (citing In re Daou Sys., Inc., 411 F.3d 1006,

8  1013 (9th Cir. 2005); Ascon Props., Inc. v. Mobil Oil Co., 866 F.2d 1149, 1160 (9th Cir.

9  1989) ("Leave need not be granted where the amendment of the complaint . . .

10  constitutes an exercise in futility . . . .")).

11

12                                               **ANALYSIS**

13

14          **A.      Plaintiffs' § 1983 Claims**

15          Brought solely under § 1983, Plaintiffs assert their first, second, and third causes

16  of action against Defendants for unreasonable search and seizure/destruction, violations

17  of their due process rights, and the taking of their private property without just

18  compensation, respectively.  ECF No. 1, ¶¶ 59-78.

19          Section 1983 provides relief against "[e]very person who, under color of any

20  statute, ordinance, regulation, custom, or usage, of any State . . . causes . . . any citizen

21  of the United States . . . the deprivation of any rights, privileges, or immunities secured

22  by the Constitution."  42 U.S.C. § 1983.  Section 1983 gives parties "a method for

23  vindicating federal rights elsewhere conferred."  Graham v. Connor, 490 U.S. 386, 394

24  (1989) (quoting Baker v. McCollan, 443 U.S. 137, 144 n. 3 (1979)).  Parties can seek

25  relief under § 1983 against persons acting under the color of state law.  West v.

26  Atkins, 487 U.S. 42, 48 (1988).  "Persons" covers "state and local officials sued in their

27  individual capacities, private individuals and entities which acted under color of state law,

28  and local governmental entities."  Vance v. Cty. of Santa Clara, 928 F. Supp. 993, 995–

1   96 (N.D. Cal. 1996).

2   Plaintiff must allege "personal participation" in the alleged constitutional violation

3   on the part of the individual to subject that person to individual liability; this is a

4   "personal-capacity" suit under § 1983.  Jones v. Williams, 297 F.3d 930, 934 (9th Cir.

5   2002).  "Persons" includes municipalities and their agents only in the narrow instances

6   when the municipality itself causes the Constitutional violation through a policy or

7   custom; this is an "[o]fficial-capacity suit" under § 1983.  Monell v. New York Dep't of

8   Social Services, 436 U.S. 658, 690 n. 55 (1978).  In a personal-capacity § 1983 claim, a

9   government official personally causes a deprivation of a federal right and is personally

10   liable.  In an official-capacity claim, the governmental entity or its agents act as the

11   "moving force" behind the deprivation, and the entity remains liable for the actions of its

12   agents.  Kentucky v. Graham, 473 U.S. 159, 165–67 (1985).

13   Understanding the difference between 1) an official-capacity Monell theory of

14   liability against a municipality and 2) a personal-capacity theory of liability against the

15   individual law enforcement officers involved in the alleged violation is critical to resolving

16   the constitutional issues presented by this case.

17   The only defendant who personally participated in executing the search warrant

18   against Plaintiffs was Deputy Miller, and he is not a party to this Motion.  The remaining

19   Defendants (the County of El Dorado, the El Dorado County Sheriff's Department and

20   Sheriff D'Agostini) are named only in their official capacities under Monell.   Any such

21   Monell liability depends upon a showing that those entities and D'Agostini were

22   deliberately indifferent to a pattern or practice of civil rights violations committed by their

23   deputies, including Miller.  See Merritt v. County of Los Aneles, 875 F.2d 765, 770 (9th

24   Cir. 1989).  We must accordingly next determine whether any such showing has been

25   made.

26   ///

27   ///

28   ///

7

1

2

### 1.   Plaintiffs' § 1983 Claims Against Defendants Sheriff's Department and D'Agostini

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

Plaintiffs' Complaint names, in addition to the County of El Dorado itself, the El Dorado County Sheriff's Department, as an additional defendant along with D'Agostini in his official capacity as El Dorado County Sheriff.  The Supreme Court has held that an "official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." Kentucky v. Graham, 473 U.S. 159, 166 (1985).  Such a suit "is not a suit against the official personally, for the real party in interest is the entity." Id. (emphasis in original).  Where an action names municipal officials in their official capacity and the municipal entity itself is also being sued, "then the claims against the individuals are duplicative and should be dismissed." Williams v. Dirkse, No. 1:21-cv-00047-BAM (PC) 2021 WL 2227636, at *8 (June 2, 2021) (quoting Vance v. Cty. of Santa Clara, 928 F. Supp. at 993 (N.D. Cal. 1996).  Moreover, where a subdivision of a county is named, such as a sheriff's department, the appropriate defendant is the county. Spears v. El Dorado Cty. Sheriff's Dep't, 2019 WL 1043105, at *3 (E.D. Cal. Mar. 5, 2019) (quoting Vance v. Cty. of Santa Clara, 928 F. Supp. at 996) ("The County is a proper defendant in a § 1983 claim, an agency of the County is not."). See also, Brown v. Cty. of Kern, 2008 WL 544565, at *3 (E.D. Cal. Feb. 26, 2008) ("A suit against . . . Kern County Sheriff Deputies, in their official capacities is the same as a suit against the payor of any damages that may be awarded, therefore the proper defendant is Kern County."); Brewster v. Shasta Cty., 275 F.3d 803, 805 (9th Cir. 2001) (finding that the sheriff acts on behalf of the county when administering county policies).[4]

23

24

25

Given the above caselaw, Plaintiffs cannot maintain an official capacity suit against either the Sheriff's Department or D'Agostini because they are inseparable from the County itself.  Accordingly, the Complaint against Defendants Sheriff's Department

26

27

28

---

[4] It should be noted that, although the California Supreme Court in Venegas v. Cty. of Los Angeles, 32 Cal. 4th 820, 839 (2004), held that sheriffs are actors of the state – not the county – when enforcing state laws, that ruling is not binding on this Court for purposes of § 1983 liability.  Therefore, because the Ninth Circuit has not adopted the holding in Venegas, the Court declines to follow Venegas's reasoning.

1  and D'Agostini in his official capacity, is DISMISSED, with leave to amend.  This leads

2  us to consider whether Plaintiffs' suit is proper against the only other moving defendant,

3  El Dorado County.

4            **2.    Plaintiffs' § 1983 Claims Against Defendant County**

5            Municipalities cannot be vicariously liable for the conduct of their employees

6  under § 1983, but rather are only "responsible for their own illegal acts." Connick v.

7  Thompson, 563 U.S. 51, 60 (2011) (citing Monell, 436 U.S. at 665-83).  In other words, a

8  municipality may only be liable where it individually caused a constitutional violation via

9  "execution of government's policy or custom, whether by its lawmakers or by those

10 whose edicts or acts may fairly be said to represent official policy."  Monell, 436 U.S. at

11 694.

12           The Supreme Court made clear that plaintiffs may not merely allege that a

13 municipal employee wronged them to achieve success on a Monell claim.  "Where a

14 plaintiff claims that the municipality has not directly inflicted an injury, but nonetheless

15 has caused an employee to do so, rigorous standards of culpability and causation must

16 be applied to ensure that the municipality is not held liable solely for the actions of its

17 employee." Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown, 520 U.S. 397, 405 (1997)

18 (emphasis added).  Similar demands apply to allegations of inadequate training.  See

19 City of Canton, Ohio v. Harris, 489 U.S. 378, 389-91 (1989).  Following Twombly and

20 Iqbal, the Ninth Circuit held that plaintiffs alleging Monell claims must provide allegations

21 that are not mere recitations of the elements of such a claim, and such facts must

22 plausibly suggest entitlement to relief.  AE ex rel. Hernandez v. Cty. of Tulare, 666 F.3d

23 631, 637 (9th Cir. 2012); see, e.g., Dougherty v. City of Covina, 654 F.3d 892, 900-01

24 (9th Cir. 2011).

25           Plaintiffs' Complaint nonetheless offer only conclusory allegations that Defendants

26 engaged in policies, procedures, and customs that would support Monell liability.  See

27 generally, ECF No. 1.  Plaintiffs' Opposition to this Motion fares no better by merely

28 pointing to the single instance involving Plaintiffs along with alleged statements made by

1     D'Agostini at an El Dorado County Commission meeting nearly a year later.  Plaintiffs

2     have failed to identify plausible deficiencies in Defendants' policies, procedures, and

3     customs constituting deliberate indifference to others' property.  The Complaint alleges

4     neither a complete absence of officer training for cannabis-related search warrants, nor

5     describes the inadequacy of any training that did occur.  Additionally there are no factual

6     averments identifying any prior hemp-related search and seizure violations of a

7     constitutional magnitude that would have notified Defendants of the need for specific

8     training on marijuana/hemp issues.  Given those shortcomings, Plaintiffs have not met

9     the pleading requirements necessary to state a viable claim under Monell.  See AE ex

10     rel. Hernandez, 666 F.3d at 637.

11        Plaintiffs have, thus, failed to sufficiently plead their Monell claims against the

12     moving Defendants.  ECF No. 1, ¶¶ 10, 59-78.  Accordingly, Defendants' Motion to

13     Dismiss the first, second, and third causes of action is GRANTED with leave to amend.

14             **3.**     **Plaintiffs' State Law Claims**

15        Plaintiffs assert the fourth through twelfth causes of action on state law grounds.

16     However, this action was brought under federal question jurisdiction.  Because Plaintiffs

17     failed to sufficiently plead a constitutional basis for their federal claims at this time, the

18     Court declines to exercise supplemental jurisdiction over the remaining state law claims

19     at this time pursuant to 28 U.S.C. § 1367.  Therefore, the Court need not adjudicate the

20     merits of Plaintiffs' state law claims and declines to do so.

21             **4.**     **Plaintiffs' Declaratory Relief Claim[5]**

22        In the Motion to Dismiss briefing, the parties both agree that Plaintiffs' thirteenth

23     cause of action will be resolved through the litigation of the other asserted claims.  See

24     ECF No. 14, 19:16-21;  ECF No. 15, 1:19-21.  Therefore, this cause of action is

25     cumulative to this dispute.  Accordingly, Defendants' Motion to Dismiss the thirteenth

26     cause of action is GRANTED.

27

28         [5] The Complaint erroneously stated the claim for declaratory relief as the "fourteenth" cause of action when it is in fact the thirteenth cause of action.

**CONCLUSION**

For all the foregoing reasons, Defendants' Motion to Dismiss (ECF No. 6) is GRANTED.  Plaintiffs' Complaint, as directed against Defendants El Dorado County, the El Dorado County Sheriff's Department, and Sheriff D'Agostini is accordingly DISMISSED with leave to amend as to the first, second, and third causes of action. Because Plaintiffs' federal law claims fail, the Court lacks jurisdiction over Plaintiffs' pendant state law claims, and it declines to adjudicate the merits of those claims in the absence of any cognizable federal claims.  Finally, pursuant to the agreement of the parties, Defendants' Motion to Dismiss the thirteenth cause of action is GRANTED.

Should Plaintiffs wish to do so, they may file an amended complaint not later than twenty (20) days after the date this Memorandum and Order is electronically filed. Failure to amend within those time parameters will result in a dismissal of Defendants El Dorado County, the El Dorado County Sheriff's Department, and Sheriff D'Agostini, with prejudice and without further notice to the parties.

IT IS SO ORDERED.

Dated:  September 27, 2021

MORRISON C. ENGLAND, JR.
SENIOR UNITED STATES DISTRICT JUDGE

11